IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RODOLFO ARANDA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 7886 |
| v. ) | |
| ) | Hon. Virginia M. Kendall |
| J VEGA'S CONSTRUCTION, INC., and ) | |
| JAVIER VEGA, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rodolfo Aranda brings this action against his former employer J Vega's ("J Vega's") Construction, Inc. and its owner Javier Vega (collectively, "Defendants") alleging that they failed to pay him overtime wages at the rate required under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, and the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105/1. (Dkt. 21). Currently before the Court is Defendants' motion to dismiss the First Amended Complaint. (Dkt. 22). For the reasons stated below, Defendants' motion is granted, and the First Amended Complaint is dismissed without prejudice.

## BACKGROUND[1]

Aranda worked as a bricklayer for J Vega's at some point during the three years before he filed the complaint in this matter in November 2017. (Dkt. 21) at ¶ 14. J Vega's is an Illinois construction company with its principal place of business in Elgin, Illinois, which Aranda alleges is "an enterprise engaged in commerce or in the production of goods for commerce within the meaning of . . . 29 U.S.C. § 203(s)(1)(A)." *Id.* at ¶¶ 9, 10. While he was employed, Aranda—

---

[1] For purposes of Defendants' motion, the Court accepts as true all well-pleaded allegations in the complaint and counterclaim and draws all reasonable inferences in favor of Aranda. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

"on a customary and regular basis"—worked more than forty hours per week. In particular, Aranda worked from 5:30 a.m. until 7 p.m. on weekdays, he worked shorter hours on Saturdays, and he occasionally worked on Sundays. *Id.* at ¶¶ 19–21. With regard to his 5:30 a.m. weekday start time, Vega agreed to give Aranda rides to the various construction sites, but he told Aranda that he needed to report at 5:30 a.m. in order to get a ride. However, Aranda would "perform work tasks" for somewhere between one hour to an hour and a half before getting into a car with Vega and riding to a site. *Id.* at ¶¶ 22–23. Aranda was not paid for the time he spent working prior to riding to the construction sites, nor was he compensated for the time spent driving to the sites. *Id.* at ¶ 24. In addition, Aranda asserts that he was not paid overtime equal to time-and-a-half of his "regular rates of pay" for hours worked in excess of forty hours in a workweek.

According to Aranda, in the course of his employment, he "handled goods produced in interstate commerce and worked on goods produced in interstate commerce. He did so by traveling to building supply companies and buying goods and materials necessary to perform the work he was assigned. This included purchasing, loading and transporting materials and goods produced in interstate commerce including cement and related materials and tools." *Id.* at ¶ 16. However, during the course of this proceeding, Aranda admitted that "he did not personally purchase the supplies." (Dkt. 26) at 2. In any event, on account of these allegations, Aranda has filed a two-count First Amended Complaint alleging that Defendants violated both the FLSA and the IMWL. *Id.* at ¶¶ 27, 34. Defendants move to dismiss the FLSA claim for failure to state a claim and to decline to exercise supplemental jurisdiction over the IMWL claim. (Dkt. 22).

## **LEGAL STANDARD**

For a claim to survive a motion to dismiss brought pursuant to Rule 12(b)(6), it must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the complaint (or counterclaim) contains factual content that supports a reasonable inference that the defendants are liable for the harm. *Id.* In making the plausibility determination, the Court relies on its "judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679). The complaint (or counterclaim) should be dismissed only if the plaintiff or counter-plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations. *Christensen v. Cty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007) (citations omitted). That being said, a "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). For purposes of this motion, the Court accepts as true all well-pleaded allegations in the complaint and counterclaim and draws all reasonable inferences in favor of the non-moving party. *See Killingsworth*, 507 F.3d at 618.

## DISCUSSION

The FLSA requires that employers pay their employees a minimum hourly wage, 29 U.S.C. § 206(a), and one and one-half times their hourly wage for every hour worked in excess of forty hours per workweek. 29 U.S.C. § 207(a)(1). The FLSA imposes these requirements on employees who are "engaged in commerce or in the production of goods for commerce" (individual-based coverage) or who are "employed in an enterprise engaged in commerce or in the production of goods for commerce" (enterprise-based coverage). 29 U.S.C. §§ 206(a), 207(a)(1). "Commerce" under the FLSA, "means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). In other words, "commerce" refers to interstate commerce. Courts interpret

3

the employment definitions in the FLSA broadly and comprehensively to accomplish the remedial purposes of the Act. *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987). Defendants argue that the Court must dismiss Aranda's FLSA claim because he has failed to sufficiently allege either enterprise or individual coverage under the FLSA. (Dkt. 23). Because Aranda has agreed that J Vega's is not an "enterprise" as defined by the FLSA (*see* (Dkt. 26) at 1), the Court will only address whether individual coverage applies.

Individual coverage under the FLSA applies when the employee's work "is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity." *Martinez v. Manolos Tamales, Inc.*, 2015 WL 5144024, at *1 (N.D. Ill. Aug. 31, 2015) (quoting *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955)); *accord Jacoby v. Schimka Auto Wreckers, Inc.*, 2010 WL 3171515, at *3 (N.D. Ill. Aug. 11, 2010). "It is not enough that the employee's activities affect or indirectly relate to interstate commerce: they must be actually in or so clearly related to the movement of the commerce as to be a part of it." *Rivas v. Marcelo Hand Car Wash Inc.*, 2010 WL 4386858, at *2 (N.D. Ill. Oct. 28, 2010) (citation and quotations omitted). Aranda's complaint contains only one paragraph alleging that he "handled goods produced in interstate commerce and worked on goods produced in interstate commerce. He did so by traveling to building supply companies . . . . This included . . . loading and transporting materials and goods produced in interstate commerce including cement and related materials and tools." *Id.* at ¶ 16. As this paragraph does not contain any allegations that Aranda "produced goods for commerce," the only questions is whether he was "engaged in commerce."[2] *See McLeod v. Threlkeld*, 319

---

[2] Although Aranda argues that he can show that he was either engaged in commerce *or* in the production of goods for commerce ((Dkt. 26) at 3), nothing in the First Amended Complaint alleges or indicates that Aranda worked to actually produce any goods. Instead, he simply alleges that he worked as bricklayer

4

U.S. 491, 493–94 (1943) (with regard to the phrase 'engaged in commerce,' "[w]e have held that this clause covered every employee in the 'channels of interstate commerce,' as distinguished from those who merely affected that commerce") (citing *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 567–68 (1943)).

Several courts have found that similarly conclusory allegations are insufficient to support individual coverage under the FLSA. For example, in *Macias v. All-Ways, Inc.*, 2017 WL 2278061 (N.D. Ill. May 25, 2017), the plaintiff's complaint contained a "one-sentence allegation that he 'handled goods that moved in interstate commerce' during the course of his employment at All-Ways, a landscaping company." *Id.* at *2. The court rejected the plaintiff's theory of individual FLSA coverage, concluding that his "allegations relate to work that plaintiff performed locally and that was far removed from interstate commerce" and thus were insufficient to bring him within the realm of FLSA coverage. *Id.* Similarly, in *Urrutia v. Buena Vista Rest. & Bar*, 2014 WL 7403463 (N.D. Ill. Dec. 29, 2014), the plaintiff's complaint alleged that he was a kitchen staff member who "handled goods that moved or that were intended to move in interstate commerce." *Id.* at *2. The court held that this allegation was insufficient "to raise the inference that [the plaintiff's] work for the defendants was 'directly and vitally related' to interstate commerce." *Id.*; *see also, e.g., Martinez*, 2015 WL 5144024, at *2 (finding allegation that plaintiff "handled goods that moved in interstate commerce" was insufficient because plaintiff's work cooking and cleaning at restaurants did not raise an inference that she produced goods for or engaged in interstate commerce); *Jacoby v. Schimka Auto Wreckers, Inc.*, 2010 WL 3171515, at *4 (N.D. Ill. Aug. 11, 2010) (finding that tow truck company employee's work was "isolated local activity" that tangentially used tools that may have traveled in interstate

---

who "repair[ed] existing commercial/residential structures" and "performed other tasks necessary." (Dkt. 21) at ¶¶ 14–15.

5

commerce and thus did not qualify for individual coverage); *cf. Higgins v. Carr Bros. Co.*, 317 U.S. 572, 574 (1943) (affirming judgment against plaintiff where his employment involved only work as night shipper putting up orders and loading trucks for delivery to retail dealers in Maine or driving a truck distributing merchandise to the local trade, despite the fact that some of the fruit was from dealers in other states); *Rivas*, 2010 WL 4386858, at *2 (on summary judgment, holding that plaintiff's local "handling" of vehicles was simply too far removed from interstate commerce to bring plaintiff within the scope of the statute as Congress intended it).

The same reasoning applies here. Aranda's allegations relate to work that he performed locally and that was removed from the channels of interstate commerce. In particular, Aranda alleges that he "travel[ed] to building supply companies," but his complaint is silent as to where he traveled. And although he alleges that he "handled goods produced in interstate commerce and worked on goods produced in interstate commerce" and "load[ed] and transport[ed] goods produced in interstate commerce including cement and related materials and tools," these allegations are not sufficient to support the plausible inference that Aranda's individual work was "directly and vitally" or "clearly related" to the movement of the commerce. *See Arenas v. Truself Endeavor Corp.*, 2013 WL 271676, at *3 (N.D. Ill. Jan. 23, 2013) (finding allegations that the plaintiffs purchased cleaning supplies that had moved in interstate commerce insufficient to support individual-based FLSA liability because all purchases had been made from in-state sources). At best, Aranda's allegations show that he merely affected interstate commerce, which is not enough. *McLeod*, 319 U.S. at 493–94.

Aranda's citation to *Cardenas v. Grozdic*, 2012 WL 2359399 (N.D. Ill. June 20, 2012) (*see* (Dkt. 26) at 3–4) does not change this result, because that case analyzed the definition of an "*enterprise* engaged in commerce or in the production of goods for commerce," not an

6

individual. *Cardenas*, 2012 WL 2359399, at *3; *see also* 29 U.S.C. § 203(s)(1). Because the analysis of whether a company qualifies as an enterprise under this definition is distinct from the definition of whether an employee qualifies as a covered individual, the Court's holding in Cardenas that the plaintiff's use of "tools and accessories that were manufactured in other states and transported to Illinois in the performance of his employment duties" was sufficient to allege that the defendant "employees engaged in commerce or in the production of goods for commerce, or [had] employees handling, selling, or otherwise working on goods or materials that [were] moved in or produced for commerce by any person" cannot be applied here and is not instructive, particularly in light of the ample caselaw discussing individual coverage and the corresponding interstate commerce pleading standard. *Cardenas*, 2012 WL 2359399, at *3.

Accordingly, Aranda has failed to plead that he qualifies for individual coverage under the FLSA, and the Court therefore dismisses his FLSA claim without prejudice. Because the Court grants Defendants' motion to dismiss Aranda's FLSA claim, it does not have subject matter jurisdiction over Aranda's IMWL claim and it declines to exercise supplemental jurisdiction over that claim at this time. *See* 28 U.S.C. § 1367(c)(3).

## **CONCLUSION**

For the reasons explained above, the Defendants' motion to dismiss (Dkt. 22) is granted and the First Amended Complaint is dismissed without prejudice. Aranda shall have until 7/24/18 to file a Second Amended Complaint consistent with this opinion to the extent that he can do so.

*[signature]*
Hon. Virginia M. Kendall
United States District Judge

Date: July 2, 2018